UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| HOLLY THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-00209-TWP-DML |
| | ) |
| SHOSHONE TRUCKING, LLC., | ) |
| | ) |
| Defendant. | ) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND RULING FOLLOWING BENCH TRIAL**

This matter is before the Court following a bench trial on Plaintiff Holly Thomas' ("Thomas") claim against Defendant Shoshone Trucking, LLC ("Shoshone") to determine whether Thomas was entitled to any backpay, front pay, or injunctive relief. (Filing No. 104.) Thomas initiated this action alleging hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964. (Filing No. 1.) After the parties stipulated to liability and Thomas' compensatory and/or punitive damages[1], this matter proceeded to a bench trial on June 8, 2022, on the remaining claims. The Court, having heard testimony and received evidence, now issues the following findings of fact and conclusions of law, pursuant to Federal Rule of Civil Procedure 52.

**I.     FINDINGS OF FACT**

---

[1] Specifically, on April 22, 2022 the parties stipulated to the entry of judgment on liability against Shoshone on Thomas' claims brought under Title VII of the Civil Rights Act in her Amended Complaint. (Filing No. 14.) The parties stipulated to judgment against Shoshone in the amount $50,000.00 in compensatory and/or punitive damages, which is the maximum amount Plaintiff is entitled to under 42 U.S.C. § 1981(a)(3)(A) as held by the Court in its Entry on Defendant's Partial Motion for Summary Judgment. (Filing No. 52.) The Parties agreed that the Court would determine Thomas' entitlement, if any, to back pay, front pay, and/or a reasonable attorney's fee. (Filing No. 72).

Shoshone is a trucking company located in Peru, Indiana. (Filing No. 105 at 154-55.) Shoshone was formed in 2009, and Rochelle Bowyer ("Bowyer") is its sole owner and president. *Id*. As a signatory to the Teamsters Heavy Highway Agreement, Shoshone only employs drivers who are members of the Teamsters union. *Id.* Shoshone operates as a subcontractor to primary contractors for work on state construction projects, primarily providing dump truck hauling services. *Id.* at 154. These hauling services include moving asphalt, wet batch, stone, dirt, and removal of materials. *Id.* Other than the drivers, the only employees of Shoshone are Ted Peters, the dispatcher who works in the office with Bowyers, and four mechanics. *Id.* at 155.

Due to the nature of Shoshone's work, its drivers are laid off during the winter months when there are cold temperatures. *Id*. at 59. Depending on the needs of the prime contractors, heavy contract projects typically end around Thanksgiving and begin again around April. *Id*. at 160-61. To accommodate this cycle of layoffs and rehiring, Shoshone employs a seniority system with the more senior drivers being the laid off last and rehired first. *Id*. at 161. Shoshone also does not offer paid time off, including no pay for days missed for doctor's appointments, personal or family illness, or holidays. *Id.* at 84-87, 171. In addition, Shoshone's drivers do not often drive trucks when it is raining and drivers are not paid for the days when they cannot work. *Id*. at 86, 162.

Because Shoshone only hires union drivers, the rate of pay is determined by the specific work performed. *Id.* at 156-57; Ex. 200. In 2020, if a driver was assigned to Heavy Highway work—which includes hauling all material for highway projects, except stockpiling, which involves hauling stone or sand from a quarry to an asphalt or wet batch plant—he or she would be paid $30.71 per hour. *Id.* at 156-57, 163. When drivers were performing stockpile work, empty truck duties, or travel time during this same time, they were paid $17.25. *Id.* at 157; Ex. 200.

Travel time included the time a driver got in their company truck to the time they arrived on the job site. (Filing No. 105 at 158.) Being a signatory to the union, Shoshone is obligated to pay 100% employer-paid health, dental, and vision benefits for its employees and their families to the Teamsters Health Welfare Fund. *Id.* at 170-71. The Teamster health plan covers 100% for everyone in a driver's family—spouse and children—and the driver pays no deductible. Shoshone does not offer a 401k plan, bonuses, or paid maternity leave. *Id.* Shoshone does have a union pension fund paid at 100%, however, a driver must be affiliated with the union for five years and the company has to pay in on behalf of the driver for five years before they become vested. *Id.*

In 2018, Shoshone began a three-year contract with E & B Paving. *Id.* at 163-65. The project was located in Seymour, Indiana and involved working on the I-65 highway reconstruction. *Id.* Shoshone would be providing dump truck hauling services, including hauling wet batch, removal, dirt, asphalt, and stone. *Id.* at 149-50, 163. During the term of the project, Shoshone parked its trucks at the E & B plant located in Seymour, Indiana. *Id.* at 164-65. In addition to working on the I-65 project, Shoshone also found other projects for some of its drivers on days when E & B had less work for Shoshone's drivers. *Id.* at 167-168.

Due to the distance between Shoshone's office in Peru, Indiana and the I-65 project, Shoshone arranged to provide temporary housing for several of its drivers. *Id.* 165-66. While several drivers agreed to relocate for the duration of the project, Shoshone also needed to hire drivers locally. *Id.* at 165. Thomas and her husband, Michael Thomas--who lived in Vallonia, Indiana--were two of the local drivers hired by Shoshone to work on the I-65 project. *Id.* at 147-48, 166-67. Thomas calculates her home to be 326 miles roundtrip from Shoshone's Peru office and it took her four hours to drive one-way to Shoshone's office in Peru, Indiana. *Id.* at 26, 97. Michael Thomas was hired in October 2018, and Thomas was hired in April 2019. *Id.* at 166.

During most of her time working for Shoshone, Thomas worked on the I-65 project. *Id.* at 83-85.  From August 15, 2020 to August 23, 2020, however, she was removed from working on that project and reassigned to other work. *Id.*; Exs. 111, 213.  While Thomas contends that this was retaliation from Ted Peter' due to complaints of harassment she had reported, her pay records indicated that she still received the same rate of pay: $30.71 per hour while on the job and $17.25 per hour while traveling. (Filing No. 105 at 59-60.)  During this week away, Thomas also earned more money than her husband who remained working on the I-65 project. *Id.* at 175-188; Exs. 207, 209, and 213.  Beginning on August 24, 2020, Thomas was assigned back to the I-65 project and her timecards reflect that she remained on that project until her termination.  (Ex. 111.) Thomas reports that despite the entries on her timecards, she was sent to other locations; however, it does not appear to have impacted her pay. (Filing No. 105 at 126-129.)

While Thomas's work hours fluctuated each week, her pay records show that she averaged 37.28 hours of work each week and a weekly average salary of $1,126.99. (Ex. 207.)  This average rate was similar to her husband's, who worked an average of 40.01 hours per week and whose weekly average pay was $1,230.73.  (Exs. 209 and 210.)  As a company, the average Shoshone driver worked 40 hours in 2019 and 41 hours in 2020. (Filing No. 105 at 188-89.)

During her employment with Shoshone, Thomas was discriminated against by Shoshone. Filing No. 14).  Thomas was terminated from Shoshone on June 26, 2020 in retaliation for complaining regarding the discriminatory treatment as well as for filing an EEOC Charge. *Id*. at 4, (Filing No. 105 at 94.)  A few months later, Shoshone's work on the I-65 project concluded in mid-September 2020. *Id.* at 164.  Between Thomas' termination and the conclusion on Shoshone's work on I-65, Shoshone began laying off all of its local drivers. *Id.* at 168.  Thomas' husband, Michael Thomas, who was more senior than Thomas during her employment with Shoshone, was

laid off on August 8, 2020 when the Seymore project ended. *Id.* at 139-40, 168-69. Michael Thomas immediately secured employment with MS Transport—another union signatory trucking company—and remains in their employ. *Id*. Thomas and her children are on her husband's union benefit plan with MS Transport.

According to Bowyer, if Thomas had not been terminated on June 26, 2020, she would only have been employed 11 more days before being laid off. *Id.* at 169. Since the conclusion of the I-65 project, Shoshone has not contracted for a project in southern Indiana and has relocated its trucks and workers back to Peru, Indiana. *Id.* at 163-64.

After her termination, Thomas applied for jobs at other trucking companies. *Id.* at 98. All the companies were based in southern Indiana near her home. *Id.* at 98-100. Thomas was eventually hired by Lyles Construction on March 31, 2021. *Id.* at 105-06. Lyles Construction is a non-union trucking company and is not required to pay its drivers the same amount as Shoshone. *Id.* Thomas worked at Lyles Construction until July 16, 2021.[2] *Id.* at 106-07, 115; Ex. 211. After applying for new driving jobs, Thomas was hired by Cornerstone Trucking on October 3, 2021, and she is still employed there. (Filing No. 105 at 117, 122.)

## II. CONCLUSIONS OF LAW

The parties stipulated to the issue of liability against Shoshone on Thomas' claims brought under Title VII of the Civil Rights Act in her Amended Complaint at Dkt. 14, and Thomas' compensatory and/or punitive damages award of $50,000.00. (Filing No. 72). The sole issue tried during the bench trial was Thomas' entitlement, if any, to backpay, front pay, or injunctive relief. A victim of discrimination in violation of Title VII is presumptively entitled to complete relief.

---

[2] Thomas testified that she left Lyles because they did not provide her with a safe truck, but Shoshone disputes this evidence because of the late disclosure and inability to verify. Based on conflicting testimony at trial, the Court is unclear regarding the specific reason Thomas' employment with Lyles ended; however, as it does not influence the Court's decision regarding damages, the Court need not include a discussion in this opinion.

*Miles v. State of Indiana*, 387 F.3d 591, 599 (7th Cir. 2004); *Hutchinson v. Amateur Elec. Supp., Inc.*, 42 F.3d 1037, 1044 (7th Cir. 1994).  The court is authorized "to order such affirmative action as may be appropriate, which may include, but it not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate."  *See* 42 U.S.C. §2000e-5(g).  "The [ ] court must exercise its equitable power in a manner consistent with the objectives of Title VII."  *Miles*, 387 F.3d at 599.

**A.     Back Pay**

The purpose of back pay is to put the plaintiff in the same position she would have been if the discrimination had not occurred.  *Harper v. Godfrey, Co.*, 45 F.3d 143, 149 (7th Cir. 1995).  Included in this calculation are any "benefits [s]he would have received from the Defendant if [s]he had not been [terminated].  *See* 7th Cir. Pattern Civil Jury Instruction 3.11 (2017).  It is a plaintiff's burden to prove the lost wages and benefits and their amount and, if the plaintiff fails to do so for any time period, damages may not be awarded.  *Id.*  While the plaintiff must establish the amount of damages, she is presumptively entitled to full relief.  *Hutchinson*, 42 F.3d at 1044.  Back pay extends from the date of the adverse employment action until the date of judgment.  *See Ortega v. Chi. Bd. of Ed.*, 280 F. Supp. 3d 1072, 1099 (N.D. Ill. 2017) (citing *McKnight v. General Motors Corp.*, 973 F.2d 1366, 1369 (7th Cir. 1992)).

Thomas seeks various forms of backpay from 2019 through July 2022, including lost benefits and prejudgment interest, in the total amount of $141,859.00.[3]  (Filing No. 110-1 at 7-9.)  The first portion of that total is for $21,939.00 in 2019 and 2020 while Thomas was still employed by Shoshone.  Based on Thomas' testimony at trial, the Court understands Thomas' assertion to be

---

[3] The Court notes that Thomas' Proposed Findings of Fact and Conclusions of Law state that she seeks $229,167.00 in total backpay and front pay (Filing No. 110-1 at 9, ¶ 62); however, the calculation of the individual amounts presented earlier in the filing equal $235,167.00.

that her pay was reduced in 2020 when she was temporarily removed from working on the I-65 project; however, the Court is unclear what basis she has for seeking backpay for her work in 2019. As the Court heard no evidence to support backpay for 2019, Thomas is not entitled to any of the damages she seeks for that year. Importantly, the evidence of Thomas' timesheets establishes that her temporary removal from the I-65 project, despite her testimony, did not negatively affect her pay. While Thomas contends that "she was sent to far away locations which resulted in lower wages," she had the burden at trial to point to specific evidence that would allow the Court to determine which days, if any, her pay was unfairly reduced. She has not done this and, therefore, the Court cannot award her the $21,939.00 she seeks while still employed with Shoshone.

The next amount of backpay Thomas seeks is for the remainder of 2020 after she was no longer working for Shoshone. This amount included $49,920.00 in lost wages and $6,270.00 in lost benefits for the full six months between July 2020 and December 2020. (Filing No. 110-1 at 7-8.) This calculation is flawed in several aspects. First, while Thomas uses $1,600.00 as her average weekly pay, the evidence presented at trial shows that her average pay was $1,126.99. Second, the evidence at trial demonstrated that no Shoshone driver is employed through the end of December each year. Shoshone begins to lay off its drivers as the winter season begins, with the most senior drivers typically being laid off around Thanksgiving. Third, Shoshone's work on the I-65 project ended in mid-September 2020. All drivers who lived in southern Indiana were laid off by Shoshone when the I-65 project ended, including Thomas' husband who was senior to her, and was laid off by Shoshone on August 8, 2020. The only evidence supporting Thomas' benefits amount is the subjective belief of herself and her husband Michael Thomas. Moreover, Bowyer testified that Shoshone has not performed any work in southern Indiana or employed any drivers who live in southern Indiana since the project I-65 ended. Accordingly, the Court finds

that the evidence presented at trial only supports awarding Thomas her average weekly salary, $1,126.99, for six additional weeks, which was the date of her husband's termination. Thomas is therefore entitled to $6,761.94 in backpay.

Concerning any pension benefit loss, the evidence shows that Thomas was not eligible to draw from the union's pension fund—which vests after five years of service with the union—at the time of her termination Thomas would not have been eligible for another nearly four years had she remained employed with Shoshone. *Id* at 171.

In addition, Thomas has provided no evidence to show that she incurred any expenses for benefits. She was covered by her husband's union benefits after she was terminated, and thereafter, she and her children were eligible for her husband's health insurance through MS Transport. The evidence at trial supports Bowyer's testimony that "any union trucking company that is signatory to the Heavy Highway agreement"--including MS Transport--"is obligated to pay 100 percent of benefits." (Filing No. 105 at 170.) The Court finds that Thomas is not entitled to any amount for unpaid benefits as she provided no evidence she suffered out-of-pocket expenses or purchased additional coverage while unemployed. *See Kossman v Calumet Cnty*, 800 F.2d 697, 703-04 (7th Cir. 1986), *overruled on other grounds*, *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir. 1988).

Regarding her claim for lost vacation pay, Thomas presented no evidence that Shoshone offered paid vacation. To the contrary, the evidence at trial was that Shoshone does not offer paid time off, including no pay for days missed for doctor's appointments, personal or family illness, or holidays.

Thomas is entitled to prejudgment interest on her backpay award. Though Title VII does not fix a specific rate for assessing prejudgment interest, the Court uses guidance from the Seventh Circuit in using the federal prime rate. *See Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874

F.2d 431, 436-37 (7th Cir. 1989). Using the current 6.25% interest rate, the Court finds that Thomas is entitled to $1,106.59 in prejudgment interest, awarding Thomas a total backpay award of $7,868.53.

As for the remaining amounts of backpay Thomas seeks, the evidence at trial demonstrates that Thomas would not have been employed by Shoshone past August 8, 2020. With Shoshone's work on the I-65 project concluding in September 2020, Thomas would not have been rehired the following April to continue work with Shoshone. No evidence at trial showed that Shoshone continues to work in Southern Indiana or that Thomas would have been able to commute approximately 326 round trip to continue working for the company. Thus, the Court finds that Thomas is not entitled to any damages for backpay in 2021 and 2022.

**B.      Front Pay**

"The goal of front pay is to put the victim in the financial position [she] should have enjoyed, when circumstances make it inappropriate to direct the employer to promote (or hire) [her]." *Biondo v. City of Chi., Ill.*, 382 F.3d 680, 691 (7th Cir. 2004). Front pay cannot extend past the time a reasonable person needs to achieve the same or an equivalent position in the absence of discrimination. *Id.* Any award of front pay "must be grounded in available facts, acceptable to a reasonable person and not highly speculative." *Downes*, 41 F.3d at 1142. The plaintiff bears the initial burden of providing the district court "with the essential data necessary to calculate a reasonably certain front pay award," which includes "the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate." *McKnight*, 973 F.2d at 1372. While an award of front pay must be grounded in available facts, acceptable to a reasonable person, and not highly speculative, the district court has "very

considerable discretion . . . in considering the question." *Downs v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1142 (7th Cir. 1994).

Thomas seeks $93,308.00 in total front pay: $85,693.00 for alleged pay from July 1, 2022 until July 1, 2025 and $7,615.00 for travel time. (Filing No. 110-1 at 9.) Shoshone argues that Thomas is not entitled to this front pay amount as she would have been laid off in the summer of 2020 when Shoshone's work on the I-65 project was completed. (Filing No. 112 at 25.) The Court agrees. As explained above, Thomas, at most, would have been employed an additional six weeks with Shoshone. Thomas has already been compensated for these six weeks with the Court's backpay award; she is not entitled to an additional award of front pay.

**C.     Injunctive Relief**

In addition to damages, Thomas seeks injunctive relief in the form of expungement of all of her "disciplinary or termination records which reflect or imply that [she] was terminated for cause or that [she] was disciplined." (Filing No. 110 at 15.) Thomas also seeks to enjoin Shoshone from "informing any third party that [Thomas] was fired for cause, that [Thomas] was disciplined for being reckless or for any other reason, and further from stating to any person that [Thomas] is not eligible for rehire." *Id.* A plaintiff is entitled to permanent injunctive relief in addition to success on the merits upon a showing that she will suffer "irreparable harm" absent an injunction, "that the benefits of granting the injunction outweigh the injury to the defendants," and "that the public interest will not be harmed by the relief requested." *Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003).

Shoshone argues that an injunction should not be granted for several reasons. Shoshone points out that the first time Thomas indicated she was seeking the expungement of her personnel file and other injunctive relief was at the final pre-trial conference on May 24, 2022, just two weeks

before trial. Shoshone argues this is too late to raise a claim for injunctive relief as Shoshone did not have the opportunity to conduct discovery on the basis for Plaintiff's claim. (Filing No. 112 at 26). *See W. Palm Beach Acquisitions, Inc. v. Kia Motors Am., Inc.*, 2022 U.S. Dist. LEXIS 75277 *23 (S.D. Fla., Apr. 25, 2022) ("The Court agrees with Defendant that Plaintiff cannot suddenly request [injunctive] relief now so close to trial and after the close of discovery). In response, Thomas argues that in her Statement of Claims, filed on August 13, 2021, she twice stated that he sought injunctive relief in the form of reinstatement or promotion. (Filing No. 32 at 4). But reinstatement and promotion are not forms of injunctive relief presently sought by Thomas.

Shoshone next argues that even if Thomas had timely raised a request for injunctive relief, she is not entitled to injunctive relief because she has not established a likelihood of future harm or discrimination. (Filing No. 112 at 27.) "In deciding whether to grant injunctive relief for a successful discrimination plaintiff, the proper inquiry is whether the defendant's 'discriminatory conduct could possibly persist in the future.'" *Pace v. Pottawattomie Country Club Inc.*, No. 3:07-CV-347 RM, 2009 WL 4843403, at *9 (N.D. Ind. Dec. 11, 2009) (quoting *Bruso v. United Airlines*, 108 F.3d 1569, 1578 (7th Cir. 1997)). The Court agrees with Shoshone. The evidence presented and proffered at trial did not establish that any injunction is necessary to prevent future harm. The harassment that Thomas experienced is not likely to reoccur as she no longer works for Shoshone and she is not likely to do so in the future. Following her termination from Shoshone, Thomas sought and successfully obtained employment with Lyles Construction and later Cornerstone Trucking. Unlike the plaintiff is *Sizelove v. Grant Untied School Corporation* (2022 WL 1045022 April 7, 2022, US District Court for the Southern District of Indiana), Thomas has presented no evidence that expungement of her termination record would likely benefit her attempts to obtain future employment. Additionally, the actions Thomas seeks to enjoin are

11

different forms of hypothetical harassment that Thomas has not experienced. The Court has no basis for enjoining actions that are purely speculative. Thus, the Court awards no injunctive relief.

### III. CONCLUSION

After hearing testimony and receiving evidence, and considering the same, for the reasons stated above, the Court concludes that Thomas is awarded, in addition to $50,000.00 in the previously stipulated compensatory and punitive damages, the following amounts: Backpay from June 27, 2020 through August 8, 2020 in the amount of $6,761.94 and $1,106.59 in prejudgment interest, totaling $7,868.53.

Plaintiff's Motion for Attorney Fees and Costs (Filing No. 108) remains pending. Final judgment consistent with this Entry will issue under separate order once the Court issues a ruling on that Motion.

**SO ORDERED**.

Date: 10/28/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mark R. Waterfill
ATTORNEY AT LAW
mark@waterfilllaw.com

Cheyna Galloway
JACKSON LEWIS PC (Indianapolis)
cheyna.galloway@jacksonlewis.com

Michael W. Padgett
JACKSON LEWIS PC (Indianapolis)
michael.padgett@jacksonlewis.com

Melissa K. Taft
JACKSON LEWIS PC (Indianapolis)
melissa.taft@jacksonlewis.com