**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| HOLLY THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-cv-00209-TWP-KMB |
| | ) | |
| SHOSHONE TRUCKING, LLC., | ) | |
| | ) | |
| Defendant. | ) | |

<u>**ORDER ON PLAINTIFF'S PETITION FOR ATTORNEY FEES AND COSTS**</u>
<u>**AND DIRECTING FINAL JUDGMENT**</u>

This matter is before the Court on a Petition for Attorney Fees and Costs ("Fee Petition") (Filing No. 108) filed by Plaintiff Holly Thomas ("Thomas"), by counsel Mark Waterfill ("Counsel") pursuant to 42 U.S.C. § 2000e-5. Thomas initiated this lawsuit against Defendant Shoshone Trucking, LLC ("Shoshone") for violating Title VII of the Civil Rights Act of 1964 ("Title VII"). The parties stipulated to the entry of judgment on liability against Shoshone and stipulated to a judgment against Shoshone in the amount of $50,000.00 in compensatory damages (Filing No. 72). Following a bench trial on the issue of Thomas' entitlement, if any, to back pay, front pay, and/or reasonable attorney's fees, Thomas filed the instant Fee Petition seeking attorney fees of $186,200.00, and costs and expenses of $ 5,220.10, for a total of $ 191,420.10. Thereafter, the Court awarded Thomas $7,868.53 in back pay and prejudgment interest (Filing No. 128). For the reasons explained below, the petition is **granted**, but for a lesser amount.

## I.     <u>BACKGROUND</u>

Shoshone is a trucking company located in Peru, Indiana that operates as a construction subcontractor for work on state construction projects (Filing No. 128 at 2). In 2018, Shoshone began a three-year contract for a project involving work on portions of the I-65 highway

reconstruction project in Seymour, Indiana.  Shoshone would be providing dump truck hauling services.  *Id.*  Due to the distance between Shoshone's office in Peru, Indiana and the I-65 project, Shoshone needed to hire local drivers.  *Id.*  Thomas—who lived in Vallonia, Indiana—was one of the local drivers hired by Shoshone. *Id.* During her employment with Shoshone, Thomas was the victim of severe and pervasive sexual harassment and gender discrimination. *Id.* at 4.  She was terminated from Shoshone on June 26, 2020 in retaliation for complaining regarding the discriminatory treatment as well as for filing a Charge against Shoshone with the Equal Employment Opportunity Commission ("EEOC").  *Id.*

On October 8, 2020, Thomas filed this action against Shoshone, asserting violations of Title VII (Filing No. 1).  At the time Thomas filed this action, Shoshone had 65 employees, and since its inception, Shoshone has never had more than 80 employees (Filing No. 52 at 2).  On April 6, 2022, Shoshone sent Thomas a written offer to settle the case for $150,000.00, and Thomas rejected that offer. (Filing No. 131-2).  On April 22, 2022, the parties stipulated to judgment against Shoshone as to liability on the Title VII claims and to judgment in the amount of $50,000.00 in compensatory and/or punitive damages, which is the maximum amount Thomas was entitled to receive under 42 U.S.C. § 1981(a)(3)(A) (Filing No. 52).  Shoshone stipulated to liability, and Thomas became the "prevailing party" on her Title VII claims, therefore she is eligible to receive reasonable attorney's fees and costs under 42 U.S.C. § 2000e-5(k).

On June 8, 2022, the Court held a bench trial on the sole remaining issue of Thomas' entitlement, if any, to back pay, front pay, and/or attorney's fees (Filing No. 104).  At trial, Counsel informed Shoshone's counsel that Thomas would accept $160,000.00 to settle this entire matter. (Filing No. 132 at 1).  Shoshone's counsel responded that the offer was withdrawn and Shoshone would offer $100,000.00, which offer was rejected by Thomas. *Id*.

Counsel filed the instant Fee Petition on July 6, 2022, prior to the Court issuing its findings of fact and conclusions of law following the bench trial (Filing No. 108). The Fee Petition requests attorney's fees in the amount of $186,200.00, and costs in the amount of $5,220.10, for a total of $191,420.10.

On July 22, 2022, Shoshone contemporaneously filed a response to the Fee Petition (Filing No. 115) and a Motion for Leave to Supplement Record Following Entry of Final Judgment ("Motion for Leave") (Filing No. 117), which requested leave to file supplemental evidence of settlement offers Shoshone made to Thomas, including the Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. The Court granted Shoshone's Motion for Leave (Filing No. 130). Shoshone has submitted its supplemental evidence, and Thomas has responded in opposition. (Filing No. 131; Filing No. 132). Thomas filed a reply on July 29, 2022 (Filing No. 118).

On October 28, 2022, the Court issued its Findings of Fact, Conclusions of Law, and Ruling Following Bench Trial and awarded Thomas $6,761.94 in back pay, no front pay, and $1,106.59 in prejudgment interest, totaling $7,868.53 (Filing No. 128 at 12). The Court stated that final judgment would enter under separate order once the Court ruled on the Fee Petition.

## II.   LEGAL STANDARD

Pursuant to 42 U.S.C. § 2000e–5(k) of Title VII, "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fee (including expert fees) as part of the costs." A prevailing plaintiff is entitled to fees and costs "in all but special circumstances." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 417 (1978). As the prevailing plaintiff, Thomas may recover her reasonable attorney's fees and costs.

There is no "precise formula" to determining a reasonable attorney's fee, but "the district court generally begins by calculating the lodestar—the attorney's reasonable hourly rate multiplied

by the number of hours reasonably expended." *Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.*, 574 F.3d 852, 856 (7th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)); *see also Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) ("The touchstone for a district court's calculation of attorney's fees is the lodestar method, which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended."). In determining the lodestar, the court must bear in mind that a defendant is not required to pay for hours that are "excessive, redundant, or otherwise unnecessary." *Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012) (citing *Hensley*, 461 U.S. at 434). The lodestar, however, is just the starting point. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018). After calculating the lodestar, "[t]he district court may then adjust that figure to reflect the various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher*, 574 F.3d at 856–57.

"Although a prevailing plaintiff in a civil rights case is normally entitled to costs pursuant to Fed. R. Civ. P. 54(d), and to attorneys' fees under 42 U.S.C. § 1988, those rules are qualified by the operation of Fed. R. Civ. P. 68." *Payne v. Milwaukee County*, 288 F.3d 1021, 1024 (7th Cir. 2002). Rule 68 "is designed to provide a disincentive for plaintiffs from continuing to litigate a case after being presented with a reasonable offer." *Id.* Rule 68 permits a party, at least fourteen days before trial, to "serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Under Rule 68, "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer," then the offeree may not recover post-offer fees or costs and must pay the offering party's post-offer costs. Fed. R. Civ. P. 68(d); *Grosvenor v. Brienen*, 801 F.2d 944, 948 (7th Cir. 1986). A prevailing plaintiff's judgment for Rule 68 purposes

includes both the trial award as well as pre-offer attorney's fees and costs that are recoverable under § 1988. *Grosvenor*, 801 F.2d at 948.

### III.   DISCUSSION

The Court will first determine the amount of reasonable attorney's fees and then the reasonable costs to which Counsel is entitled.  The Court will then discuss whether Rule 68 limits Thomas' recovery of reasonable fees and costs.

### A.   Reasonable Attorney's Fees

Counsel requests $186,200.00 in attorney's fees, which he contends is 456.5 hours of time billed at an hourly rate of $400.00 (Filing No. 108; Filing No. 108-1 at ¶ 8).  There are two errors in this request.  First, 456.5 hours multiplied by $400.00 equals $182,600.00, not $186,200.00. The lesser amount is stated at the end of Counsel's billing summary ("Billing Summary") (Filing No. 108-5), so the request for $186,200.00 appears to have been made in error.  Second, Shoshone points out that the billing entries in the Billing Summary actually total 458.5 hours, not 456.5 hours (Filing No. 116-3).  Shoshone's calculation is consistent with the Court's summation of the Billing Summary entries (Filing No. 116-3 at 10). The Court will therefore proceed under the assumption that Thomas is seeking to recover for 458.5 hours of time billed at an hourly rate of $400.00, which totals $183,400.00.

#### 1.   Reasonableness of Hourly Rate

Generally, a reasonable hourly rate is based on what the attorney charges and receives in the market from paying clients for the same type of work.  *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003).  Counsel bears the burden of producing satisfactory evidence that the hourly rate is reasonable and in line with those prevailing in the community.  *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011).  If Thomas' counsel satisfies this burden, then Shoshone

must offer evidence setting forth "a good reason why a lower rate is essential." *Id.* (internal quotation and citation omitted).

"[A]n attorney's self-serving affidavit alone cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's services." *Owens v. Howe*, 365 F. Supp. 2d 942, 947 (N.D. Ind. 2005) (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 556 (7th Cir. 1999)). "The fee applicant can meet his initial burden 'either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases.'" *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001) (quoting *Spegon*, 175 F.3d at 556); *see Blum v. Stenson*, 465 U.S. 886 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

Shoshone argues that Thomas has not offered sufficient evidence supporting the requested hourly rate of $400.00, and that the $400.00 hourly rate contradicts prior representations by Thomas and Counsel about Counsel's actual hourly rate in this case (Filing No. 115 at 4–5).

In support of the $400.00 hourly rate, Counsel submitted his declaration (Filing No. 108-1), as well as declarations of attorneys S. Andrew Burns, Alan Wilson, and Jeff Risinger (Filing No. 108-2; Filing No. 108-3; Filing No. 108-4). Counsel[1] later filed a supplemental declaration and an affidavit from attorney Stephanie Jane Hahn (Filing No. 113), and subsequently filed affidavits from attorneys Kimberly Jeselskis, Catherin F. Duclos, and Robert Saint (Filing No. 114-1; Filing No. 114-2; Filing No. 114-3). Counsel's declarations describe his professional

---

[1] Counsel's supplemental declaration (Filing No. 111-2) was signed on the same date as his original declaration (Filing No. 108-1) and appears to be virtually identical to the original affidavit.

experience at law firms and as a solo practitioner, as well as his involvement with various legal organizations (Filing No. 108-1 at ¶¶ 2–4).  He avers that he currently litigates "employment law and commercial litigation cases in state and federal court," and "regularly bill[s] clients at a rate of $400. per hour."  (Filing No. 108-1 at ¶ 3, 5.)  He states that prior to becoming a solo practitioner in 2016, he worked at a law firm where his regular hourly rate was $530.00.  The supporting declarations from other attorneys are largely the same, each describing the declarant's relationship to Counsel and opining that based on their familiarity "with the fees customarily charged in Central Indiana for similar legal services. . . . $400.00 per hour is a very reasonable fee for an attorney of Mr. Waterfill's caliber and experience."  (*See, e.g.*, Filing No. 108-2 at ¶ 8.)

In response, Shoshone asserts several reasons why these declarations are insufficient to establish a reasonable $400.00 hourly rate.  Each of these reasons is well taken.  First, although Counsel states he "regularly bill[s] clients at a rate of $400 per hour," (Filing No. 108-1 at ¶ 5), he does not specify what type of clients he bills at that rate.  Counsel states he "routinely litigate[s] employment law *and* commercial litigation cases" but does not state whether he works on both plaintiff-side and defense-side employment cases, or whether he charges the same rate in both employment and commercial litigation cases (Filing No. 108-1 at ¶ 3 (emphasis added)).  As Shoshone notes, plaintiff-side employment law, defense-side employment law, and commercial litigation cases may all command different hourly rates. Counsel's statement that his hourly rate at his prior law firm was $530.00 is also of little value, as he does not specify the type of work he did while at that firm.

The declarations of other attorneys are likewise unhelpful in determining the market rate for Counsel's services in cases like this one. Several of the declarant attorneys, including Mr. Burns, Mr. Wilson, Mr. Risinger, and Mr. Saint do not practice in employment law, and one of the

declarants, Mr. Wilson, practices in Kokomo, Indiana (Filing No. 108-2; Filing No. 108-3; Filing No. 108-4; Filing No. 114-3). And of the declarations from Indianapolis, Indiana employment attorneys --all of which were submitted after Thomas' deadline to request fees--none identify the declarant's hourly rate. Each declaration simply states that in the declarant's opinion, $400.00 per hour is a reasonable fee. These attorneys' opinions are not evidence of "the rate that lawyers of similar ability and experience in their community normally charge their paying clients for the type of work in question." *Spegon*, 175 F.3d at 555; *see Harper v. City of Chicago Heights*, 223 F.3d 593 (7th Cir. 2000) ("While an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services, such affidavit in conjunction with other evidence of *the rates charged* by comparable lawyers is sufficient to satisfy the plaintiff's burden." (emphasis added)).[2] The Court therefore concludes that the declarations submitted fail to sufficiently support the request for a $400.00 hourly attorney fee.

Even if the above declarations were sufficient to satisfy Thomas' burden, Shoshone has offered evidence showing why a lower rate is essential. Shoshone has submitted the best, and perhaps only, evidence of the rate Counsel actually charged in this case, which is the statements he and Thomas made identifying Counsel's hourly rate in this case (Filing No. 118 at 4, 6 (citing *Davis v. Lakeside Motor Co.*, No. 10-CV-405, 2014 WL 3341033, at *2 (N.D. Ind. July 7, 2013) ("The Court presumes that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate.") and *Montanez v. Simon*, 755 F.3d at 547, 553 (7th Cir. 2014 (stating the "best evidence" of a reasonable rate "is the amount the attorney . . . bills for similar work"))). In April 2021, in Thomas' answers to Shoshone's first set of interrogatories, Thomas stated under oath

---

[2] **Thomas argues that Shoshone's attorneys have not disclosed their hourly rates (Filing No. 118 at 2). For the reasons discussed in the Court's Order on Plaintiff's Objections to Magistrate Judge's Order Denying Motion to Compel Attorneys' Fee Information, Shoshone's attorneys' hourly rates have only nominal relevance to the reasonableness of the requested $400.00 hourly rate, and no relevance to the sufficiency of Thomas' evidence.**

that she intended to seek attorney's fees from Shoshone, and that the amount of fees requested would be "calculated by the time spent times my attorney's regular hourly rate, which is $250 per hour" (Filing No. 116-2 at 9).  A few months later, in a July 23, 2021 email to Shoshone's counsel, Counsel stated that as of that date he had incurred approximately $35,000.00 in fees billed at his "normal[]" rate of $250 per hour" (Filing No. 116-1).

On reply, Thomas argues that the $250.00 hourly rate was merely "an estimate" and preceded "protracted litigation, including a trial" (Filing No. 118 at 7). However, nothing in Thomas' interrogatory answers or Counsel's email suggests that the $250.00 rate was an estimate, and her reply does not explain the significant discrepancy between an estimated rate of $250.00 per hour and a requested rate of $400.00 per hour—a sixty percent increase.

Thomas next asserts that Shoshone unnecessarily protracted litigation by initially denying liability, and "[p]ursuant to Rule 37(c)(2), Defendant should be required to pay Plaintiff's 'reasonable expenses, including attorney fees' for Defendant's denial of every request for admission". (Filing No. 119 at 8.)  However, Thomas has never moved for fees under Rule 37 nor has she addressed the standard for obtaining fees under Rule 37.  Further, the Court does not agree that Shoshone unreasonably prolonged this case by initially denying liability because, as Thomas points out, Shoshone stipulated to liability once Thomas produced compelling evidence proving its liability.  *Id.*  Moreover, even if unexpectedly protracted litigation could account for Counsel expending more hours on this case than anticipated, it would not account for him billing at a higher hourly rate than anticipated.  *See Vega v. Chicago Park District*, No. 13 C 451, 2020 WL 4053821, at *8 (expressing "sympathy for plaintiff's arguments . . . that defendant reaps what it has sown" with respect to number of hours billed, not hourly rate, and ultimately reducing fees).

Thomas lastly argues that the increased $400.00 hourly fee is reasonable because it "compensate[s] for the delay in payment" to Counsel, who accepted Thomas' case on a contingent fee basis (Filing No. 118 at 2).[3]  In support of this argument, Thomas cites *Vega v. Chicago Park District*, 12 F.4th 696 (7th Cir. 2021).  *Id.* at 7.  In *Vega*, after six years of litigation, the plaintiff prevailed on her Title VII claim and was awarded fees.  The district court calculated attorneys' fees based on the attorneys' current rates rather than their rates from six years earlier, when the litigation was filed. *Id.* at 705. The defendant appealed the district court's decision to use the attorneys' current rates, but the Seventh Circuit affirmed the district court's decision, acknowledging that it has previously affirmed district courts' use of both historic rates and current rates in "multi-year litigation."  *Id.* at 706.

Notably, the *Vega* court stated it was "skeptical of using current billing rates in litigation that lasts as long as this case did," and only affirmed the district court in light of the "highly deferential abuse of discretion standard."  *Id.* at 706.  The court cautioned that "district courts should avoid awarding current billing rates when it results in a 'windfall[,]' particularly in years-long litigation."  *Id.*  The difference between the attorneys' historic and current rates in *Vega* gave the Seventh Circuit "pause" because "the applied rate [was] over 40% higher than [the attorneys'] rate when the litigation commenced."  Here, between July 2021 (Filing No. 116-1) and July 2022 (Filing No. 108), Counsel's purported hourly rate increased sixty percent—a larger rate increase in a shorter amount of time than in *Vega*.  An award at $400.00 per hour would result in a windfall to Thomas.  For these reasons, Counsel's reasonable hourly rate in this case is $250.00.

---

[3] To the extent counsel argues he is entitled to an upward adjustment of his fees because he accepted Thomas' case on a contingent basis and thus accepted some "risk" of delayed payment or nonpayment, the Seventh Circuit has rejected that argument. *Pickett*, 664 F.3d at 644–56 (restating that the contingent nature of a fee agreement does not affect determination of reasonable hourly rate); *City of Burlington v. Dague*, 505 U.S. 557, 566–67 (1992) (prohibiting enhancements to lodestar calculation for contingency fee arrangements).

2.      **Reasonableness of Hours Expended**

Thomas submits that Counsel expended 458.5 hours on this case.  Shoshone asserts several

specific objections to the Billing Summary's entries (Filing No. 116-3), and generally argues that

the purported number of hours is unreasonable and/or unrecoverable because: (a)  the billing

entries are vague due to redactions; (b) the entries are vague due to block billing; (c) Counsel's

timekeeping method led to overbilling; (d) many entries are redundant, unnecessary, or excessive;

and (e) Counsel's billed hours through July 23, 2021, as stated on the Billing Summary, are triple

what he represented on that date.  Shoshone also argues that it made a substantial settlement offer

to Thomas and that her rejection of the offer warrants a further reduction of attorney's fees.  The

Court will address each argument in turn.

a.      **Vagueness Due to Redactions**

First, Shoshone contends that redactions throughout the Billing Summary prevent the Court

from determining whether the time expended by Counsel was necessary or reasonable. The Court

agrees. Nearly half of the entries in the Billing Summary contain the description "Confer with

client regarding [redacted]" (Filing No. 108-5). Over fifty hours (roughly ten percent of Counsel's

purported time) was spent solely "Confer[ring] with client regarding [redacted]" (*see, e.g.*, Filing

No. 108-5, entries for June 16, 2019, March 12, 2020, June 4, 2020, and October 6, 2020, March

15, 2021, July 29, 2021, October 24, 2021); *Montanez*, 755 F.3d at 555–56 ("The [district court]

judge also deducted some hours because they were improperly or inadequately recorded.  For

example, the court rejected time billed for vaguely described telephone calls; hours billed as 'call

to client,' without more, were disallowed."). Counsel argues that the redactions were made

pursuant to the attorney-client privilege, but regardless of the reason, the redactions have left the

Court wholly unable to determine whether the attorney-client conferences were a reasonable length

or were reasonably necessary to advance Thomas' Title VII claims.  (*See* Filing No. 108-5, entries

for June 16, 2019, September 23, 2019, September 27, 2019, and February 19, 2021 (billed around the time Thomas was pursuing her unemployment insurance case and subsequent appeal)).

The same vagueness is found in several block-billed entries. Approximately 125 hours' worth of time entries include unspecified portions of time dedicated to "Confer[ing] with client regarding [redacted]" (Filing No. 108-5). These redactions again leave the Court unable to determine the reasonableness of the entire block of time, despite the remaining portions of the block-billed entries being unredacted. For example, on February 22, 2021, Counsel purportedly spent two hours "Review[ing] Shoshone preliminary witness and exhibit list, sen[ding] list to client: [and] confer[ring] with client regarding [redacted]" (Filing No. 108-5 at 6). Shoshone's preliminary witness and exhibit list was two pages long (excluding the signature block and Certificate of Service), so reviewing and forwarding the list, on its own, would have taken only a few minutes. The rest of that two-hour period was presumably spent conferring with Thomas. But without knowing the general purpose of that conference, the Court cannot determine whether the entire two hours of block-billed time is reasonable. This problem is found in several other block-billed entries, including the entries on March 4, 2021, March 5, 2021, March 18, 2021, April 1, 2021, June 10, 2021, November 3, 2021, and January 25, 2022. *Id.* Those entries, among others, account for one or more hours of time spent performing relatively quick and simple tasks, like reviewing a minute entry from the Court, and unspecified conferences with Thomas. These entries are only a few examples of the type of vague block-billed entries found throughout the Billing Summary. Because the only time-consuming tasks in these entries were conferences with Thomas, about which the Court has no information, the Court cannot determine whether the bulk of the billed time for these entries is reasonable.

"In situations like this, where ambiguous time entries or redacted time entries impede meaningful judicial review, the courts are left with some discretion on how to proceed." *Cumulus Radio Corp. v. Olson*, No. 15-cv-1067, 2015 WL 3407438, at *4 (C.D. Ill. May 27, 2014). Thomas argues she should be given an opportunity to submit unredacted information to the Court for *in camera* review (Filing No. 118 at 11 n.2), but "[t]his is not an attractive way to resolve the problem." *Id.* Allowing Thomas to submit unredacted entries only for the Court's *ex parte* review would deprive Shoshone of the opportunity to object to the reasonableness of the time entries. Because so many of the entries are redacted, Shoshone would be unable to contest a significant portion of requested fees.

Additionally, the Court does not believe that *in camera* review is necessary. Although parties are generally entitled to assert privilege in fee petitions, certain information pertaining to attorney-client communications can be disclosed without violating the attorney-client privilege. "[N]o court of appeals has held that disclosure of the general subject matter of a billing statement under fee-shifting statutes violates attorney-client privilege." *Avgoustis v. Shinseki*, 639 F.3d 1340, at 1341–42 (Fed. Cir. 2011). "Courts have consistently held that the general subject matters of clients' representations are not privileged." *United States v. Legal Servs. For N.Y.C.*, 249 F.3d 1077, 1081 (D.C. Cir. 2001); *see Avgoustis*, 639 F.3d at 1345 (summarizing cases that have addressed disclosure of general topic of attorney-client communications, stating that those "courts have concluded that requiring such disclosures does not violate the attorney-client privilege absent unusual circumstances").

Thomas provided such information in at least five entries (Filing No. 108-5, entries for September 25, 2019 ("Confer with client regarding appeal"), January 23, 2021 ("Confer with client regarding expert witness"), April 2, 2021 ("confer with client regarding discovery responses"),

June 18, 2021 ("confer with client regarding the same"), November 8, 2021 ("confer with client regarding expert witness report"), and April 6, 2022 ("Confer with client regarding pay information.")). These descriptions are not detailed enough to divulge the substance of Counsel and Thomas' communications, but they at least enable the Court to determine whether the time spent discussing the identified topic is reasonable.  It is unclear why Counsel chose not to use similar descriptions for the dozens of other entries reflecting conferences with Thomas, but regardless, the redactions make those dozens of other entries vague and thus unreviewable.

The Court therefore declines Thomas' invitation to submit unredacted statements for *in camera* review.  However, the disallowance of time for redacted entries is not an ideal solution either, particularly as to the block-billed entries, because it would deprive Counsel of some of the fees to which he is entitled.  The Court believes that reducing Counsel's purported hours by a reasonable percentage appropriately resolves the issue caused by the redactions.  *See In re Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litigation*, No. 10-ML-2181, 2022 WL 1402875, at *9 (S.D. Ind. May 3, 2022) (applying twenty-five percent reduction of fees because invoices were "heavily redacted" and an unredacted version was not filed under seal); *Cumulus Radio Corp.*, 2015 WL 3407438, at *4 (taking the same approach and reducing fees by fifteen percent). The Court will determine an appropriate percentage after considering all of Shoshone's objections.

### b.      Vagueness Due to Use of Block Billing

Shoshone next argues that Counsel's use of block-billing leaves the Court unable to determine reasonableness.  "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 569 (7th Cir. 2006). When reviewing block-billed entries, the court must consider whether the entries are "sufficiently detailed to permit adequate review of the time billed to specific

14

tasks" and whether that time was reasonably necessary. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008).  Even as to the entirely unredacted block-billed entries, the Court finds that many of those entries are not sufficiently detailed to permit adequate review.

For example, the block-billed entry for October 9, 2020, indicates Counsel spent a total of one hour reviewing a return of service, reviewing the Magistrate Judge's Notice of Availability, and sending an email seeking service of process.  (Filing No. 108-5 at 5.)  Each of these tasks would typically take an experienced attorney only a few minutes to complete, and the block-billed entry does not contain enough detail to explain why it took Counsel one hour to complete them. Similarly, on April 5, 2021, Counsel stated he spent a total of four hours obtaining his client's signature on answers to interrogatories and sending several emails attaching Thomas' document production.  *Id.* at 7.  Shoshone asserts that the emails sent that day were not substantive and merely attached Thomas' document productions.  (Filing No. 116-3 at 6.)  Once again, the block-billed entry does not explain why so much time was reasonably necessary to complete such routine tasks.

As another example, on October 20, 2020, Counsel purportedly spent an hour "Receiv[ing] appearances of Defendant's counsel; Review[ing] corporate disclosure; Confer[ing] with opposing counsel regarding the first extension" (Filing No. 108-5 at 5).  Shoshone states that the only correspondence the parties exchanged regarding an extension occurred on October 12, 2020, not October 20, 2020 (Filing No. 116-9).  The receipt and review of appearances and a form corporate disclosure would only have taken a few minutes to complete, so the hour billed is presumably unreasonable.  "The court could go on, but these examples are sufficient." *Jacobson v. SLM Corp. Welfare Ben. Plan*, 669 F. Supp. 2d 940, 945 (S.D. Ind. 2009) (reducing fees by twenty percent, citing examples of undetailed and excessive billing entries).

Several block-billed entries also contain vague descriptions, like "Prepared letter harassment at work and reviewed response," "Prepare for pretrial conference," "Review potential witnesses," "Reviewed information from client with all paystubs," "Prepare trial exhibits," "Prepared additional exhibit," and the several entries noting time spent listening to "audio tapes" and "recordings" (Filing No. 108-5, entries for September 28, 2019, December 29, 2020, January 11, 2021, April 6, 2022, April 20, 2022, and May 18, 2022; *id.* at pp. 1–9). *See Castro v. Lloyd & Mcdaniel, PLC*, No. 15-cv-559, 2016 WL 5110046, at *8 (S.D. Ind. Sept. 19, 2016) (disallowing time for entries stating "update records on debt buyer liable for attorney," "Review materials re: potential survey expert," and "Prepare for fairness hearing"). Because these entries are so vague, the Court cannot estimate how much time could reasonably be attributed to these tasks, so the Court cannot determine whether the block-billed entry is reasonable.

Other courts in this circuit have reduced block-billed fees on a percentage basis or disallowed those entries altogether. *See, e.g.*, *Heriaud v. Ryder Transp. Servs.*, No. 03 C 0289, 2006 WL 681041, at *8 (N.D. Ill. Mar. 13, 2006) (reducing block-billed entries by fifty percent); *In re Subpoenas Issued to Danze, Inc.*, No. 05 C 4538, 12:03CV1572, 2006 WL 211942, at *3 (N.D. Ill. Jan. 18, 2006) (reducing block-billed entries by fifty percent); *In re Wiedau's, Inc.*, 78 B.R. 904, 908 (Bankr. S.D. Ill. 1987 1987) (striking block-billed entries as non-compensable). The Court finds that a percentage reduction is appropriate because the block-billed entries do not contain sufficient detail to permit review.

### c.   **Timekeeping Method**

Shoshone argues that Counsel appears to have billed his time in half-hour increments, leading to overbilling (Filing No. 115 at 2). In her Reply, Thomas does not confirm or deny that Counsel contemporaneously billed his time in half-hour increments. The Court acknowledges that Counsel might have instead recreated his time, leading to half-hour increment estimates (*see* Filing

No. 108-5 at 10, entry for March 22, 2022 (stating four hours was spent "Prepar[ing] fee statement"); Filing No. 116-3 at 9 (arguing fee statement preparation should not have taken four hours if time was recorded contemporaneously)). Regardless of which timekeeping method Counsel used, it evidently led to overbilling.

In addition to the block-billed entries identified above, several entries in the Billing Summary appear to be plainly unreasonable.  For instance, on January 12, 2020, January 19, 2020, May 20, 2020, October 26, 2021, and June 9, 2022, one half hour was billed for reading short form orders from the Court and/or appearances of counsel (Filing No. 108-5 at 13).  Similarly, on January 26, 2022, one hour was billed for reviewing the Court's order regarding the issuance of a subpoena and preparing a subpoena.  The Court's January 26, 2022 Order was a three-sentence form order (Filing No. 63), and the subpoena that was issued did not need to be prepared that day. Thomas had previously "prepared" the subpoena and filed it with her Request for Issuance of Subpoena on January 13, 2022 (Filing No. 60).  Each of the billed tasks for January 26, 2022— reviewing the Court's order and "preparing" the subpoena—may have been billed as a half-hour increment, resulting in the one-hour total.  Alternatively, the one hour could have resulted from an inaccurate recreation of Counsel's time.  In either case, the total time billed was unreasonable.

The above entries, which are only a few examples, appear to have resulted either from an inappropriate use of half-hour increments or from the careless recreation of Counsel's time. In either case, the method Counsel used to record his time led to plainly excessive entries.  The same method of timekeeping was presumably applied to all of Counsel's time entries, so the Court may reasonably assume that many, if not all, of the entries are excessive as a result.

Courts in this Circuit have reduced fees on a percentage basis where those fees were billed in half-hour increments and appeared in many instances to be excessive.  *Jacobson v. SLM Corp.*

17

*Welfare Ben. Plan*, 669 F. Supp. 2d 940 (S.D. Ind. 2009) (applying twenty percent reduction to fees billed in quarter-hour and half-hour increments, and several entries were indicative of overbilling).  Alternatively, "it is within a district court's power to reduce a fee award because the petition was not supported by contemporaneous time records."  *Harper*, 223 F.3d at 605; *see Moore v. Colvin*, No. 14-cv-1590, 2015 WL 8362375 (S.D. Ind. 2015) (denying fee petition for failure to submit contemporaneous records or recreated records reflecting actual time spent on case). Counsel's timekeeping method warrants a percentage reduction of his time.

### d.    Redundant, Unnecessary, or Excessive Entries

Shoshone also argues that some of Counsel's billed hours are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Shoshone lists its specific objections in its Exhibit C but identifies four broad examples of redundant, unnecessary, or excessive time.

First, Shoshone points to entries related to Shoshone's Partial Motion to Strike Plaintiff's Statement of Claims (Filing No. 33) and its Motion for Partial Summary Judgment (Filing No. 41), which Shoshone contends it filed solely due to Thomas' unreasonableness.  Shoshone's point is well taken.  Both of Shoshone's Motions were filed because, for the first time in her Statement of Claims, Thomas argued she had pled a claim for intentional infliction of emotional distress ("IIED"), and that her damages were therefore not capped under Title VII.  In granting Shoshone's Partial Motion to Strike, the Magistrate Judge noted that Thomas based federal jurisdiction exclusively on her Title VII claims, never named her supervisor (the individual who purportedly caused the distress) as a defendant, and failed to plausibly allege the type of conduct needed to sustain an IIED claim.  The Magistrate Judge said "it is plain that Ms. Thomas never believed she had pleaded an IIED claim against Shoshone" (Filing No. 40 at 4–5). This Court adopted the Magistrate Judge's ruling and added that Thomas' failure to conduct discovery regarding her IIED claim showed that she had never genuinely been pursuing such a claim (Filing No. 70 at 2–3).

Thomas' attempt to assert a last-minute IIED claim and avoid the Title VII's damages cap was unsuccessful, but the Court cannot say that it was unreasonable; rather it was a flawed, but good faith effort at legal advocacy. So some of Counsel's time related to that attempt (Filing No. 108-5 at 8–10) is recoverable.

Second, Shoshone points to several administrative tasks on the Billing Summary, including filing documents, conferring with court staff regarding scheduling issues, and preparing short form notices. *Spegon*, 175 F.3d at 553 ("[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel 'on tasks that are easily delegable to non-professional assistance.'" (internal citation omitted)). Shoshone's argument is again well taken (*see, e.g.*, Filing No. 108-5, entries for February 26, 2020, April 1, 2021, April 5, 2021, July 8, 2021, and July 28, 2021). Many of these types of tasks are included in block-billed entries, which complicates the Court's review of those block-billed entries, but some of the block-billed entries are plainly excessive once the nominal time spent on administrative tasks is removed. The time entry for August 21, 2020, for instance, reflects one and a half hours spent "Fil[ing] second EEOC charge and fil[ing] with the EEOC" (Filing No. 108-5 at 4). On October 4, 2021, Counsel purportedly spent one hour preparing and filing a Motion to Extend Time to Provide Expert Information (Filing No. 108-5 at 9; Filing No. 38). The Motion itself was unopposed and one page long (excluding the prayer for relief, signature block, and Certificate of Service) and would not reasonably have taken an hour to prepare. As another example, on November 2, 2021, Counsel spent one hour preparing and filing an agreed Motion to Extend Time to Respond to Summary Judgment, which was similarly unopposed and one page long (Filing No. 108-5 at 9; Filing No. 47). The time attributed to these entries is therefore unreasonable. A

19

percentage reduction is warranted to account for the disallowance of time spent on administrative tasks.

Third, Shoshone points to time spent pursuing administrative remedies that were not prerequisites to Thomas filing suit (Filing No. 115 at 16–17). The Billing Summary includes several references to Thomas' unemployment insurance case before the Indiana Department of Workforce Development and related appeal. (Filing No. 108-5, entries for September 25, 2019, January 6, 2021, September 23, 2021, and September 24, 2021). "[N]on-mandatory administrative proceedings are not ordinarily compensable unless they are reasonably expended for purposes of the subsequent litigation and were both 'useful and of a type ordinarily necessary to advance the civil rights litigation.'" *See Edge v. Board of School Trustees of Salem Community School Corp.*, No. 18-cv-167, 2021 WL 3206475, at *8 (S.D. Ind. July 29, 2021) (quoting *Webb v. Board of Education of Dyer County.*, 471 U.S. 234, 243 (1985)). Even though time spent on Thomas' unemployment case might have proved useful in this litigation, it was not necessary for her to exhaust her unemployment remedies before advancing her Title VII claims, so some of that time is not recoverable. *See Conner v. Illinois Dep't of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005) (describing prerequisites for filing Title VII claim). A percentage reduction is warranted to account for the disallowance of some time spent on administrative remedies.

Shoshone lasts points to the "exorbitant" amount of time Counsel spent reviewing audio recordings. The recordings, in total, are approximately two hours long (Filing No. 115 at 17). Shoshone estimates Counsel spent fifty-one hours reviewing the recordings but acknowledges that many of the entries related to the recordings are block-billed with other tasks. As the Court has already explained, many of the block-billed entries, including those referencing the review of recordings, do not contain enough detail to allow the Court to evaluate the reasonableness of the

entire block. The Court cannot discern the proportion of block-billed time spent reviewing recordings, so it cannot determine whether that time was reasonable. However, the Court's decision to reduce Thomas' attorney's fees on a percentage basis due, in part, to the use of block-billing should resolve Shoshone's concern as to these entries.

### e.  Requested Fees Exceed Prior Estimate

Shoshone argues that the inflation of Counsel's fees is evidenced by the discrepancy between an estimate of fees Counsel provided to Shoshone on July 23, 2021, and the amount of fees Thomas now seeks to recover through that date. On July 23, 2021, Counsel represented to Shoshone that as of that date, he had expended 140 hours on this action, billed at an hourly rate of $250.00, for a total of $35,000.00 in fees (Filing No. 116-1). According to the Billing Summary, Counsel's fees incurred through July 23, 2021, are $107,600.00[4]—more than triple the prior estimate. The Billing Summary shows Counsel expended 269 hours—nearly double the prior estimate—at an hourly rate of $400.00. In light of this discrepancy, Shoshone asks the Court to reduce Thomas' fees incurred through July 23, 2021 to $35,000.00, at a minimum (Filing No. 115 at 9).

In the reply, Counsel does not dispute that he only expended roughly 140 hours or $35,000.00 on Thomas' case as of July 23, 2021, stating that the estimate provided to Shoshone "revealed the attorney's fees accumulated *to date* as of the date of the discovery response" (Filing No. 118 at 2 (emphasis in original)). Rather, Thomas states that she "highly doubts[] that Defendant's attorneys stopped charging their clients fees for time spent litigating this case post 2021" (Filing No. 118 at 2). Shoshone does not argue that Counsel's total fees should be capped at

---

[4] **The Billing Statement indicates Counsel expended 269 hours on this case through July 23, 2021. 269 hours multiplied by $400.00 equals $107,600.00. By comparison, 269 hours multiplied by fifty percent equals 134.5 hours, and 134.5 hours multiplied by $250 equals $33,625.00.**

$35,000.00; it only argues that the portion of fees incurred through July 23, 2021, should be capped to conform with Counsel's earlier estimate.

The Court will not cap recovery at $35,000.00, recognizing Counsel's estimate was an estimate. However, the Court agrees that the enormous discrepancy between the estimate and presently requested fees, combined with Thomas' failure to explain how that discrepancy occurred, shows that the Fee Petition inflates Counsel's fees.  A percentage reduction of Counsel's hours is warranted to remedy that inflation.

### f.   Substantial Settlement Offer from Shoshone

Shoshone argues that the recovery of attorneys fees should be further reduced because Thomas rejected a substantial settlement offer made by Shoshone on April 6, 2022 (Filing No. 115 at 18; Filing No. 131). The Seventh Circuit has "said that district courts must consider 'substantial' settlement offers when determining a reasonable attorney fee award." *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, 42 F.4th 675, 683 (7th Cir. 2022). "Determining whether an offer is substantial is left in the first instance to the discretion of the district court. Nevertheless, an offer is substantial if . . . the offered amount appears to be roughly equal to or more than the total damages recovered by the prevailing party." *Moriarty v. Svec*, 233 F.3d 955, 968 (7th Cir. 2000). Substantial offers factor into fee determinations "because the fees a party incurs after rejecting the offer often provide little benefit to the party." *Cooper*, 42 F.4th at 683–84. The Seventh Circuit has therefore directed district courts to " reflect on whether to award only a percentage (including zero percent) of the attorney's fees that were incurred after the date of the settlement offer." *Id.*

On April 6, 2022, Shoshone sent Thomas a written settlement offer for $160,000.00, inclusive of fees and costs, which Thomas did not accept (Filing No. 131-2).  Shoshone argues that Thomas' rejection of the settlement offer warrants a reduction in her attorney's fees.  Thomas responds that Shoshone's supplemental evidence "does not include the complete story" (Filing No.

132 at ¶ 1). Thomas notes that the $160,000.00 offer was made prior to Defendants' stipulation of liability, and that the offer expired two days before Shoshone offered to stipulate to liability. *Id.* at ¶ 3. But assuming Shoshone made a settlement offer to avoid having to stipulate to liability, as parties often do, this timing is not unusual. Thomas further states that at trial, Counsel informed Shoshone that she would settle the case for $160,000.00, but by trial, Shoshone would only offer $100,000.00. *Id.* at ¶ 2. Once Thomas was willing to accept Shoshone's earlier offer of $160,000.00, the parties were already at trial, so a settlement would only have saved the parties the seven hours' worth of time spent attending trial. A settlement could therefore have been worth less to Shoshone at trial than it would have two months earlier.

The Court finds that Shoshone's $160,000.00 settlement offer was a "substantial" settlement offer, but the Courts is not convinced that the offer warrants a further reduction in Thomas' fees for two reasons. First, Shoshone made its settlement offer relatively late in litigation. When Shoshone made the offer, this case had already been pending for roughly two and a half years, and the only tasks left for the parties to complete were to finish their final pretrial filings (*i.e.*, final witness and exhibit lists, trial briefs, and motions *in limine*), prepare for trial, and attend trial. Second, Thomas' objection to the Magistrate Judge's Order on Shoshone's Partial Motion to Strike was still pending, so there was still a possibility that her IIED claim could have proceeded and increased the amount of Thomas' potential damages. Shoshone's substantial settlement therefore offer does not warrant a further reduction of Thomas' attorney's fees incurred after April 6, 2022.

**3.      Additional Considerations and Reasonable Percentage Reduction**

The law is clear that courts "need not, and indeed should not, become green-eyeshade accountants" in awarding fees. *Fox v. Vice*, 563 U.S. 826, 838 (2011). "[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an

attorney's time." *Id.* The vague, excessive, and unrecoverable entries throughout the Billing Summary, in addition to the discrepancies between prior estimates and current requests, leads the Court to conclude that the Fee Petition does not accurately reflect the time Counsel reasonably expended on this case.

As Shoshone's objections point out, the Billing Summary is rife with redactions that make a substantial portion of Counsel's time unrecoverable for vagueness and, for many block-billed entries, leave only a small portion of entries recoverable. Counsel's timekeeping method provides an additional ground for a percentage reduction, as it has evidently led to overbilling. Further, the Billing Summary includes time spent on administrative tasks and administrative remedies, and generally shows a lack of billing judgment. Moreover, Shoshone's arguments about the unreasonableness of Counsel's time is supported by the substantial discrepancy between the estimate of Counsel's hours that he provided on July 23, 2021, and the number of hours reflected in the Billing Summary. All of these reasons warrant a percentage reduction of the amount of Thomas' attorney's fees.

Additionally, a reduction of fees is appropriate in light of the straightforward nature of this case and Thomas' partial success. Although Title VII cases are generally not simple cases, nothing about the facts or procedure of this case made it novel or complex. The parties had few discovery disputes. The only dispositive motions filed in this case were Shoshone's Partial Motion to Strike and its Motion for Partial Summary Judgment, both of which were limited in scope and concisely briefed, and both of which were only filed because of Thomas' last-minute attempt to assert an IIED claim. The issues in this case were narrowed when Shoshone stipulated to liability, and the trial on Thomas' entitlement to back pay and/or front pay only took one day and involved only

twenty-two admitted exhibits.  This case was not a complicated one, particularly for an attorney with Counsel's level of experience (Filing No. 108-1).

Even though Shoshone stipulated to Title VII liability, and Thomas received $50,000.00 in compensatory damages, Thomas' IIED, back pay, and front pay claims did not fare as well. The IIED claim was stricken from her Statement of Claims for being inadequately pled (Filing No. 70). At trial, Thomas requested $229,167.00 in back pay and front pay, inclusive of interest, but was awarded only $7,868.53 in backpay, inclusive of interest, and no front pay (Filing No. 110-1 at ¶ 62). Thomas' award at trial was just over three percent of the amount she requested (Filing No. 110-1 at ¶ 62; Filing No. 128).  Because Thomas achieved "only partial or limited success" in this case, a fee reduction is appropriate.  *Hensley*, 461 U.S. at 434.

"The other two 'indicia of success'—significance of the legal issue on which the plaintiff prevailed, and the public purpose served—also cut against [Thomas]."  *Hatcher v. Consolidated City of Indianapolis*, 126 Fed. App'x 325, *2 (7th Cir. 2005) (finding district court did not abuse its discretion in reducing $475,225.00 fee request to $126,786.50). This case was not of any particular significance, and no public purpose was served. The injunctive relief requested by Thomas was the expungement of her personal disciplinary or termination records. Thomas ultimately did not obtain that injunctive relief, but even if she had, it would not have affected the public at large.  While the stipulation of liability and trial award may motivate Shoshone to enact policies or additional oversight to prevent future discrimination and retaliation, Thomas' suit does not directly serve any public purpose.

In this case, all of the above considerations taken together warrant a **forty percent reduction** of Counsel's hours. *See Cooke v. Stefani Mgmt. Servs., Inc.*, 250 F.3d 564, 570 (7th Cir. 2001) (affirming district court's $16,285.00 off-the-top reduction and fifty percent reduction of

remaining fees in sex discrimination case as "entirely justified"; "Cooke requested nearly $300,000 from the jury but. . . will go home with $7,500, hardly an overwhelming success. . . . [T]his was not a groundbreaking, first-time-ever-in-this-district, same-sex sexual harassment case . . . but rather a run-of-the-mill employment case in which Cooke himself was the only substantive witness for his side of the case."); *see also World Outreach Conference Center v. City of Chicago*, 896 F.3d 779, 784 (7th Cir. 2018) (affirming seventy percent fee reduction); *Spegon*, 175 F.3d at 558–59 (affirming fifty percent fee reduction); *J&J Sports Productions, Inc. v. Rafiq*, No. 17-cv-07347, 2019 WL 10784502, at *3 (N.D. Ill. Sept. 30, 2019) (reducing fees by fifty percent).

Recognizing that there is no exact formula, the requested 458.5 hours of attorney's fees, reduced by forty percent, and multiplied by an hourly rate of $250.00, equals attorney's fees of $68,775.00. The Court believes this reduction achieves the type of "rough justice" envisioned by Title VII's fee-shifting provision. *Fox*, 563 U.S. at 838. Compared to the $57,868.53 in damages that Thomas recovered, the reduced amount of fees is substantially closer than the $183,400.00 in fees requested. *Cole v. Wodziak*, 169 F.3d 486, 488 (7th Cir. 1999) ("In ordinary private litigation, however, a fee exceeding the damages usually is not 'reasonable.'"). The forty percent reduction and lower hourly fee also narrow the gap between Counsel's estimated $35,000.00 in fees incurred through July 23, 2021, and the requested $107,600.00 in fees purportedly incurred through that date. After applying the forty percent reduction and $250.00 hourly rate, Thomas' fees incurred though July 23, 2021 is $40,350.00.

Thomas is entitled to **$68,775.00 in reasonable attorney's fees** before the application of Federal Rule of Civil Procedure 68.

26

**B.**     **Reasonable Costs**

Thomas seeks $5,274.10[5] in costs, consisting of the Clerk's filing fee, various deposition

fees, and expert fees (Filing No. 108-1). She has provided invoices reflecting each of the requested

amounts, and Shoshone does not argue that any of the amounts are not recoverable. Thomas is

entitled to **$5,274.10 in costs** before the application of Federal Rule of Civil Procedure 68.

**C.**     **Application of Federal Rule of Civil Procedure 68**

On April 6, 2022, Shoshone made Thomas an Offer of Judgment for $150,000.00, inclusive

of attorney's fees and costs (Filing No. 131-1).  Shoshone argues that if Thomas' Rule 68 judgment

is less than the Offer of Judgment, she should be precluded from collecting her post-offer attorney's

fees and costs (Filing No. 131).  Thomas does not dispute that Rule 68 precludes recovery of post-

offer fees and costs if her total judgment is less than the Offer of Judgment (Filing No. 118 at 12;

Filing No. 132).

Thomas was awarded $50,000.00 by stipulation and $7,868.53 at trial.  As for pre-offer

attorney's fees, the Billing Summary shows that Counsel expended 373 hours in this case before

and on April 6, 2022.  After applying the forty percent reduction and $250.00 hourly rate for the

reasons stated above, Thomas' reasonable pre-offer attorneys' fees are $55,950.00. As to pre-offer

costs, the only cost incurred by Thomas after April 6, 2022 was the $493.00 transcript fee incurred

in May 2022, so Thomas' pre-offer costs total $4,781.10 (Filing No. 108-6 at 6).  Thomas' total

Rule 68 judgment is thus $118,599.63,[6] which is less than the $150,000.00 Offer of Judgment.

---

[5] Counsel's declaration states that Thomas's out-of-pocket expenses are $5,220.10, but the sum of the costs itemized in the declaration is $5,274.10 (Filing No. 108-1 (Itemizing $400.00 filing fee; $1,385.00 Bowyer deposition fee; $516.75 Peters deposition fee; $60.00 Peters telephone transcript; $480.00 recordings transcript; $493.00 Department of Workforce Development transcript; $1,019.35 Thomas deposition transcript; and $920.00 in expert fees)).
[6] $50,000.00 in compensatory damages + $7,868.53 in back pay and prejudgment interest + $55,950.00 in reasonable pre-offer attorney's fees + $4,781.10 in reasonable pre-offer costs = $118,599.63.

Accordingly, Thomas may not recover attorney's fees or costs incurred after April 6, 2022. Thomas' reasonable pre-offer attorney's fees and costs is $60,731.10.

Because Thomas' final judgment is less than Shoshone's Offer of Judgment, Thomas must also pay Shoshone's post-offer costs.  Shoshone states that it incurred $1,003.95 in costs associated with this litigation after April 6, 2022 (Filing No. 131-3).  Shoshone has provided an invoice reflecting the costs, and Thomas does not argue that these costs are not recoverable.  Thomas must therefore pay Shoshone $1,003.95 in costs. After the application of Rule 68, Thomas is entitled to recover **$59,727.15** in attorney fees and costs.

## IV.    CONCLUSION

Pursuant to the Court's Findings of Fact, Conclusions of Law, and Ruling Following Bench Trial, **judgment was entered** against Defendant Shoshone Trucking, LLC, in the amount of $57,868.53, inclusive of prejudgment interest, in favor of Plaintiff Holly Thomas. (Filing No. 128).

Under 42 U.S.C. § 2000e-5(k), as the prevailing party in a Title VII case, Thomas may recover her attorney's fees and costs.  The Court therefore **GRANTS** Thomas' Petition for Attorney Fees and Costs (Filing No. 108), but for a lesser amount than requested. Thomas requests attorney's fees in the amount of $183,400.00 and costs in the amount of $5,274.10, for a total award of $188,674.10.[7] For the reasons discussed above, the Court reduces the requested amount to account for a forty percent (40%) reduction in Thomas' attorney's hours and a $250.00 hourly rate.  The Court further reduces the requested amount pursuant to Federal Rule of Civil Procedure 68(d). Thus, Shoshone is **ORDERED** to pay Thomas an award of attorney's fees and costs in the amount of **$59,727.15**.

Final judgment will now issue in a separate order.

---

[7] **As the Court notes above, the mathematical calculations in Thomas' Fee Petition are incorrect.**

**SO ORDERED**.

Date:   3/27/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mark R. Waterfill
ATTORNEY AT LAW
mark@waterfilllaw.com

Cheyna Galloway
JACKSON LEWIS PC (Indianapolis)
cheyna.galloway@jacksonlewis.com

Michael W. Padgett
JACKSON LEWIS PC (Indianapolis)
michael.padgett@jacksonlewis.com

Melissa K. Taft
JACKSON LEWIS PC (Indianapolis)
melissa.taft@jacksonlewis.com